[Civ. No. 42698. First Dist., Div. Four. Aug. 1, 1978.]

SAFEWAY STORES, INC., Plaintiff and Respondent, v.
BROTHERHOOD OF TEAMSTERS AND AUTO TRUCK DRIVERS,
LOCAL NO. 70 OF ALAMEDA COUNTY, Defendant and Appellant.

## COUNSEL

Brundage, Beeson, Tayer & Kovach and Edward M. Kovach for Defendant and Appellant.

Littler, Mendelson, Fastiff & Tichy and Kathleen M. Kelly for Plaintiff and Respondent.

## OPINION

**CHRISTIAN, J.**—Brotherhood of Teamsters and Auto Truck Drivers Local 70 of Alameda County appeals from a judgment[1] vacating an award of a labor arbitrator.

Claudell Roberts, who was employed by respondent Safeway Stores, Inc., as a driver, failed to complete certain work assigned to him. Safeway suspended Roberts pending an investigation, and appellant union immediately asserted a grievance in behalf of Roberts concerning the suspension. After investigation Safeway nevertheless announced that Roberts would be given a disciplinary suspension of 60 days. Imposition of the suspension was withheld pending further discussions; such discussions resulted in a reduction of the disciplinary suspension to 15 working days.

Safeway accordingly notified Roberts that he was to return to work. The letter of notification was mailed on a Friday and Roberts did not receive it until late Monday morning, May 17, several hours after the start of his shift at 7:30 a.m. Upon receiving the letter, Roberts called the warehouse, and was directed to report to work the following morning, Tuesday, May 18.

Roberts did not, however, appear at work on Tuesday; instead, he called the shop steward in the afternoon and said that he was not coming to work that day. Late Thursday morning, May 20, Roberts called the warehouse dispatcher and informed her that he would report for work the

---

[1]The trial court's decision is set forth in a "Memorandum of Decision." Although a trial judge's informal opinion or decision normally does not constitute an appealable judgment or order, the memorandum of decision may be treated as an appealable order or judgment when it is signed and filed and when it constitutes the trial judge's final judicial determination on the merits. (See *Martino* v. *Concord Community Hosp. Dist.* (1965) 233 Cal.App.2d 51, 55-56 [43 Cal.Rptr. 255]; *Maxwell* v. *Perkins* (1953) 116 Cal.App.2d 752, 757 [255 P.2d 10]; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 5, p. 3185.)

next day. The dispatcher accordingly scheduled a delivery for Roberts on Friday, May 21, but he did not appear at work. Roberts telephoned in the afternoon and said he would not be in, and in response to a question from the dispatcher, said he did not know whether he would be in on Monday. Roberts did not come to work on Monday, May 24, but called in the afternoon to say that he would not be coming in. On Tuesday, May 25, he again failed to appear but called in the afternoon to say that he would not be in that day. During this telephone conversation, Roberts informed the dispatcher that he had been on vacation the previous week.

Safeway then discharged Roberts, stating in its letter of termination that: "A certified letter (#997448) was sent to you on May 14, 1976, directing you to return to work from disciplinary layoff on Monday, May 17, 1976. [¶] As a result of your failure to report within 7 days of such recall, we are terminating your employment as of Tuesday, May 25, 1976."

The discharge was protested; at a grievance hearing held pursuant to the collective bargaining agreement, Roberts for the first time asserted that he had not reported for work from May 18 through May 26 because he had been ill. The challenge to Roberts' discharge was not resolved informally, and the dispute was submitted to arbitration as provided by the collective bargaining agreement. The parties stipulated that the issues which they were submitting to the arbitrator were as follows: "Whether or not the grievant was discharged for just cause? If not, what is the appropriate remedy?" After a hearing the arbitrator ruled as follows: "The grievant was not discharged for just cause within the meaning of the agreement. The appropriate remedy is reinstatement to his position with backpay from the date he was able to return to work to the date the Company offers him reinstatement."

On Safeway's petition the court vacated this award, and the present appeal followed.

■ Since this case involves a collective bargaining agreement between an employer and a labor organization representing employees in an industry affecting interstate commerce, the action to vacate the arbitration award could have been brought in a federal court pursuant to section 301(a) of the Labor Management Relations Act of 1947 (29 U.S.C. § 185(a)).[2] (See *Meat & Allied Food Wkrs.* v. *Packerland Pkg. Co.*

[2] 29 United States Code, section 185(a): "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting

(E.D.Wis. 1976) 411 F.Supp. 1280, 1282 [suit to confirm and enforce arbitration award]; *Lucas* v. *Philco-Ford Corporation* (E.D.Pa. 1975) 399 F.Supp. 1184, 1187 [suit to vacate arbitrator's award]; *United Steelworkers* v. *Northwest Steel Rolling Mills, Inc.* (9th Cir. 1963) 324 F.2d 479, 481, fn. 2 [action to enforce arbitration award]; *Goodyear Tire & Rubber Co., etc.* v. *Sanford* (Tex.Civ.App. 1976) 540 S.W.2d 478 [action to vacate arbitration award].) In adjudicating an action which could have been brought in the federal courts under section 301(a), the state court must apply federal substantive law. (*Teamsters Local* v. *Lucas Flour Co.* (1962) 369 U.S. 95, 102-103 [7 L.Ed.2d 593, 598-599, 82 S.Ct. 571]; *Charles J. Rounds Co.* v. *Joint Council of Teamsters No. 42* (1971) 4 Cal.3d 888, 891-892 [95 Cal.Rptr. 53, 484 P.2d 1397]; *Butchers' Union Local 229* v. *Cudahy Packing Co.* (1967) 66 Cal.2d 925, 930-931 [59 Cal.Rptr. 713, 428 P.2d 849]; *Butchers Union* v. *Farmers Markets* (1977) 67 Cal.App.3d 905, 910 [136 Cal.Rptr. 894].) Additionally, state procedural law may not be applied in such cases if it would impede the uniform application of the federal statute essential to effectuate its purpose. (*Lehto* v. *Underground Constr. Co.* (1977) 69 Cal.App.3d 933, 943 [138 Cal.Rptr. 419] [holding that the application of Code of Civil Procedure section 1288 in that case would deprive appellant of his substantive rights under section 301]; *Butchers Union* v. *Farmers Markets, supra,* 67 Cal.App.3d 905 at p. 911; *Laufman* v. *Hall-Mack Co.* (1963) 215 Cal.App.2d 87, 89 [29 Cal.Rptr. 829, 94 A.L.R.2d 1068].)

Recognizing that California's arbitration statutes (Code Civ. Proc., § 1280 et seq.), especially those governing the scope of judicial review of an arbitrator's award and the grounds for vacation of an award (Code Civ. Proc., § 1286.2), have "considerable substantive as well as procedural significance" (*Riess* v. *Murchison* (9th Cir. 1967) 384 F.2d 727, 735; see also *Ingraham Co.* v. *Local 260, Inter. U. of E., R. & M. Wkrs.* (D.Conn. 1957) 171 F.Supp. 103; *Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1977) 67 Cal.App.3d 19 [136 Cal.Rptr. 378]), we apply federal law.[3]

■ The role of the court in reviewing the validity of an arbitration award under a collective bargaining agreement is an extremely narrow one. (*Amalgamated Meat Cut., etc.* v. *Cross Bros. M. P., Inc.* (3rd Cir.

commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

[3]State law concerning the scope of judicial review and grounds for vacating arbitration awards is substantially the same as the federal substantive law.

1975) 518 F.2d 1113, 1121; *Aro, Inc.* v. *International Ass'n of Machinists* (E.D.Tenn. 1976) 414 F.Supp. 173, 174; *Lucas* v. *Philco-Ford Corporation, supra,* 399 F.Supp. 1184, 1188.) The findings of the arbitrator on questions of law as well as questions of fact are final and conclusive. Neither the merits of the controversy nor the sufficiency of the evidence to support the arbitrator's award are matters for judicial review. (*Steelworkers* v. *Enterprise Corp.* (1960) 363 U.S. 593, 596 [4 L.Ed.2d 1424, 1427-1428, 80 S.Ct. 1358]; *Bettencourt* v. *Boston Edison Co.* (1st Cir. 1977) 560 F.2d 1045, 1049; *Lucas* v. *Philco-Ford Corporation, supra,* 399 F.Supp. 1184, 1188.) "[A]n award will not be set aside merely because the arbitrator erred in finding the facts or applying the law." (*Lucas* v. *Philco-Ford Corporation, supra,* 399 F.Supp. at p. 1188.) Erroneous reasoning by the arbitrator will not invalidate an otherwise proper award. "A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award." (*Steelworkers* v. *Enterprise Corp., supra,* 363 U.S. 593, 598 [4 L.Ed.2d 1424, 1428].) "[I]t is the award, rather than the specific reasoning employed that a court must review." (*Lucas* v. *Philco-Ford Corporation, supra,* 399 F.Supp. 1184, 1188.)

The court may not substitute its judgment for that of the arbitrator. "A court must affirm an arbitrator's award if it 'can in any rational way be derived from the agreement,' *Amalgamated Meat Cutters etc.* v. *Cross Bros.,* 518 F.2d 1113 [3d Cir. 1975] and can only reverse if 'there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop.' *Ludwig Honold Mfg. Co.* v. *Fletcher,* 405 F.2d 1123, 1128 [3rd Cir. 1969]." (*C. P. Equipment Co.* v. *Intern. Ass'n of Machinists* (W.D.Pa. 1976) 415 F.Supp. 881, 882.)

■ Here, the court concluded that the arbitrator had exceeded his powers in determining that section 3(C) of the collective bargaining agreement did not apply. Section 3(C) provides in pertinent part that: "Any employee who has been *laid off* and recalled to work and who fails to report for work within seven (7) calendar days after the mailing of notice to report . . . shall be considered to have voluntarily quit unless unable to so report because of proven illness or injury or because of unforeseen emergencies." (Italics added.) The arbitrator reasoned that the language of section 3(C), ("Any employee who has been laid off and recalled to work and who fails to report for work within seven (7) calendar days"), refers to "an employee laid off indefinitely for lack of

work who is eventually recalled when the volume of available work and his seniority warrant. In contrast, a disciplinary layoff is for a definite period, fixed in advance, and ordinarily it makes no more sense to speak of 'recalling' an employee from a disciplinary layoff than to say that he is recalled from vacation. In both cases he is to be absent for a certain time, at the end of which he is obliged to report for work."

■ The construction of the subject provision was a question of law for the arbitrator; and the fact that a different construction was possible does not empower a court to vacate the award. "[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." (*Steelworkers* v. *Enterprise Corp., supra*, 363 U.S. 593, 599 [4 L.Ed.2d 1424, 1429].) ■ The construction given section 3(C) is not a completely irrational one; we conclude that the arbitrator did not act beyond his authority in determining that the section did not apply here.

■ Respondent contends that the arbitrator exceeded his powers when he determined that Roberts should have been given a 72-hour notice to return to work before he was discharged. The collective bargaining agreement covering Roberts contains no provision for any such notice and it appears that the practice of giving 72-hour notices related to other collective bargaining agreements not involved in this proceeding. Respondent argues that imposing a practice not provided for in the agreement violated section 13, which precludes resorting to "preceding verbal and written agreements" not set forth in the agreement, and therefore, was a decision in "manifest disregard of the collective bargaining agreement, . . ." (See *Lucas* v. *Philco-Ford Corporation, supra*, 399 F.Supp. 1184, 1188.)

In our view, this contention fails to recognize what the arbitrator actually decided. The controversy which he was called upon to resolve concerned the discharge of an employee covered by a collective bargaining agreement. The ultimate questions required to be decided were (1) "Whether or not the grievant was discharged for just cause," and (2) "If not, what is the appropriate remedy." As we have seen, he correctly concluded that section 3(C) could not be applied to provide just cause for the discharge in this situation. He then went on to review all of the circumstances surrounding the discharge and concluded that just

cause did not exist. The arbitrator could not be said to have exceeded his powers in thus determining a question which he was required to decide in order to resolve the controversy.

The collective bargaining agreement does not define "just cause." Therefore, what constitutes just cause is left to the judgment of the arbitrator. Here the arbitrator found (1) that there was a rather loose practice at the plant regarding notifying the company concerning intended absences, (2) that the employee stayed away from work because of a "good faith estimate of his own lack of fitness to report," and (3) that he could reasonably, although probably erroneously, believe that he was not required to furnish proof of illness to preserve his job. The arbitrator concluded that before just cause would exist for firing an employee, he should be made aware, by a 72-hour notice (such as that provided for in the other agreements) or some other appropriate means, that he was placing his job in peril by remaining away from work. Under these circumstances, the contention that the arbitrator placed crucial significance upon the 72-hour notice provision is contrary to the plain import of his decision.

The reference to a company practice of giving a 72-hour notice at the most creates an ambiguity. ■ In this connection, the following language from *Steelworkers* v. *Enterprise Corp., supra,* 363 U.S. 593, at page 598 [4 L.Ed.2d at page 1428], is particularly appropriate: "A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award." ■ In light of the strong policy in favor of upholding arbitration awards, which we have discussed above, we can find no basis here for concluding that there was no just cause for Roberts' discharge.

The trial court concluded that the arbitrator's award was defective in that it does not completely decide one of the questions necessary to determine the controversy, namely, the question of the appropriate remedy. While the arbitrator did hold that the employee should receive back pay from the date he was able to return to work, he did not determine what that date was, stating that there was insufficient evidence to make this determination. ■ ■ Respondent contends that the award is therefore so "incomplete, ambiguous or contradictory" as to

be unenforceable. (*Bell Aerospace Co. Div. of Textron* v. *Local 516, Int. U., etc.* (2d Cir. 1974) 500 F.2d 921, 923.)[4]

■ The "back pay" aspect of the award is incomplete. In view of our conclusion that the arbitrator did not exceed his powers in concluding that there was not just cause for Roberts' discharge, we now face the question whether a rehearing should be ordered with respect to the entire controversy or whether the award should be confirmed insofar as it orders reinstatement and a rehearing ordered only to fix the amount of back pay.

Federal cases have held that in employer-employee arbitration cases, an arbitration award may be remanded for the limited purpose of determining the amount of back pay to be awarded to an employee improperly suspended or terminated. (*Enterprise Wheel & Car Corp.* v. *United Steelworkers* (4th Cir. 1959) 269 F.2d 327, revd. on other grounds; *Steelworkers* v. *Enterprise Corp., supra,* 363 U.S. 593; see *ILWU Local 142* v. *Land & Construction Co., Inc.* (9th Cir. 1974) 498 F.2d 201; *International Bro. of Elec. Wkrs., Loc. 369* v. *Olin Corp.* (6th Cir. 1972) 471 F.2d 468; *Electric Specialty Co.* v. *Local 1069, Inter. Bro. of Elec. Wkrs.* (D.Conn. 1963) 222 F.Supp. 314; *International Ass'n of Machinists* v. *Crown Cork & Seal Co.* (3d Cir. 1962) 300 F.2d 127; *United Furniture Workers of Amer.* v. *Virco Mfg. Corp.* (E.D.Ark. 1962) 257 F.Supp. 138.)

If California law were applied, however, the entire matter would be resubmitted to arbitration. In the early California case of *Muldrow* v. *Norris* (1859) 12 Cal. 331, Justice Stephen J. Field wrote that if arbitrators do not decide all questions submitted to them, the entire award is void. That is because where parties bargain for resolution of an entire controversy, if the award does not accomplish this, the consideration which moved the parties to arbitrate has failed.

*Muldrow* has been cited three times, and has been followed, disapproved in part and distinguished. *Sapp* v. *Barenfeld* (1949) 34 Cal.2d 515 [212 P.2d 233], involved the arbitration of a building contract dispute in which, after making findings relative to nonperformance and offsets, the arbitrators awarded the builder a specific sum of money. The trial court vacated the order on the ground, among others, that it was not final and definite in that the arbitrator failed to consider the owner's claim of damages for delay in completion. The Supreme Court reversed, and in

---

[4]It is noted that, under California law, the failure to find on all issues submitted to the arbitrator is a ground for vacating the award. (Code Civ. Proc., §§ 1283.4, 1286.2, subd. (e); *Jones* v. *Kvistad* (1971) 19 Cal.App.3d 836, 841 [97 Cal.Rptr. 100]; *Banks* v. *Milwaukee Ins. Co.* (1966) 247 Cal.App.2d 34, 38 [55 Cal.Rptr. 139, 36 A.L.R.3d 933].)

rejecting this contention commented as follows: "The failure to make an express finding in the award on that claim does not invalidate the award. 'There is no general rule that arbitrators must find facts and give reasons for their awards. In fact, the rule and general practice is to the contrary.' [Citations.] The dictum to the contrary in *Muldrow* v. *Norris,* 12 Cal. 331, 339, relied upon by respondents, is no longer controlling in view of the foregoing decisions and is disapproved. The award is valid if it serves to settle the entire controversy. A decision simply that one of the parties should pay the other a sum of money is sufficiently determinative of all items embraced in the submission." (34 Cal.2d at pp. 522-523.)

The "dictum to the contrary" which was disapproved apparently was that portion of the *Muldrow* opinion which states that an award must show on its face that all matters submitted to the arbitrators have been disposed of, or it is void. However, in the present case, the award shows on its face that one of the submitted questions, namely, the appropriate remedy, *was not* fully resolved because the amount of back pay was not computed.

In *Popcorn Equipment Co.* v. *Page* (1949) 92 Cal.App.2d 448, 451 [207 P.2d 647] (dism. on other grounds in *Flores* v. *Arroyo* (1961) 56 Cal.2d 492, 497 [15 Cal.Rptr. 87, 364 P.2d 263]), the arbitrators awarded a specific sum of money to respondents because of violations of an exclusive license to sell. In holding the *Muldrow* rule inapplicable, the court pointed out that *Muldrow* involved three unrelated disputes which had been submitted to the arbitrators, only two of which had been properly resolved, while in *Popcorn* the award dealt with several items, all of which arose out of sales by appellants in violation of the licensing agreement. Thus the award in *Popcorn,* which gave the results of the accounts between the parties, sufficiently disposed of all questions before the arbitrators.

In *Film Technicians* v. *Color Corp. America* (1956) 141 Cal.App.2d 553 [297 P.2d 86], the trial court vacated the award in a dispute involving the right to dismissal pay and remanded the matter to the arbitrator, "with directions for a rehearing so that the award made will specify each and every employee found to be qualified for dismissal pay and the amount thereof with respect to each of such employees." (141 Cal.App.2d at p. 555; italics deleted.) Relying on *Muldrow,* the court held that the effect of this order was to vacate the entire award and remand the entire matter, since this was all the court had the power to do. (141 Cal.App.2d at pp. 555-556.)

Despite its antiquity and the fact that it has been cited infrequently, has been both disapproved in part and distinguished, and appears to have been followed only once, *Muldrow* is still controlling in California. However, we decline to follow *Muldrow* here. Although the issue involved may be characterized as procedural, the *Muldrow* rule conflicts with the federal policy underlying section 301 of the Labor Management Relations Act. (Cf. *Laufman* v. *Hall-Mack Co., supra,* 215 Cal.App.2d 87, 89.) *Muldrow* was decided at a time when the courts looked with disfavor upon arbitration proceedings. In view of current countervailing policy considerations in the federal and state spheres, we believe its rule should not apply in a case involving the exercise of a state court's concurrent jurisdiction under section 301 of the Labor Management Relations Act. (29 U.S.C. § 185.) The procedure adopted by the federal courts is an eminently sensible way of dealing with incomplete awards, particularly in cases involving alleged wrongful suspensions or terminations; it is in furtherance of the policy that arbitration should be encouraged as an effective and expeditious process for determining particular types of disputes. In *Enterprise Wheel & Car Corp.* v. *United Steelworkers, supra,* 269 F.2d 327, 332, the United States Court of Appeals for the Fourth Circuit recognized the general rule that an award which was not definite and certain must be vacated in its entirety and then went on to comment as follows: "If this rule were given effect in the pending case the award would be set aside, for it is obviously so incomplete that disputes may well arise as to the amounts of back pay which the employer is obliged to make to the discharged workers. We think, however, that the rule forbidding the resubmission of a final award, which was developed when the courts looked with disfavor upon arbitration proceedings, should not be applied today in the settlement of employer-employee disputes." (See *Teamsters Local No. 25* v. *Penn Transportation Corp.* (D.Mass. 1973) 359 F.Supp. 344, 350.)

The judgment is reversed insofar as it vacates the award, and the trial court is directed to remand the matter to the arbitrator for a computation of the amount of back pay due.

Caldecott, P. J., and Wilson, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.